Lori A. Zirkle (Bar No. 015365)
BOWMAN AND BROOKE LLP
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012-2761
(602) 643-2300
(602) 248-0947 - Facsimile
lori.zirkle@phx.bowmanandbrooke.com
Attorneys for Defendant Breg, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Frederick C. Peterson and Amelia Peterson, husband and wife; Douglas F. Ricks, a single individual,<br><br>Plaintiffs,<br><br>v.<br><br>Breg, Inc.; DJO Incorporated; DJO, LLC; I-Flow Corporation; Stryker Corporation; Stryker Sales Corporation; Moog, Inc.; Curlin Medical Inc.; Sgarlato Laboratories, Inc.; Sgarlato R.P., Inc.; Sgarlato Med LLC; Sorenson Medical Products, Inc.; AstraZeneca PLC; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Zeneca Holdings, Inc.; Abbot Laboratories; Hospira Worldwide, Inc.; APP Pharmaceuticals, LLC; APP Pharmaceuticals, Inc.; Abraxis Bioscience, LLC; Abraxis Bioscience, Inc.; and Does 1-50,<br><br>Defendants. | Case No. 2:09-cv-02044-MEA<br><br>**BREG, INC.'S MOTION TO DISMISS** |

Defendant Breg, Inc. ("Breg"), moves the Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Complaint for failure to state any claims for which relief may be granted. Plaintiffs' Complaint is a mere formulaic recital of the elements of each claim paired in some instances with factually and legally conclusory allegations that this Court need not accept as true. Specifically, the Complaint alleges that at least twenty-two different Defendants committed torts against three Plaintiffs. The Complaint categorizes a group of twelve Defendants as "Defendant Pain Pump Manufacturers" and labels the other

group as "Defendant Anesthetic Manufacturers." Plaintiffs then generally allege causes of action against all of the Defendants in these classes when each Plaintiff only could have used the product of one pump manufacturer per surgery.

Plaintiffs' Complaint fails to identify any product at issue and thus fails to put Breg or any of the Defendants on notice of the claims against them. Because no Plaintiff alleges a pump model or even manufacturer, Defendants cannot determine which of their products, if any, is at issue. Each "Defendant Pain Pump Manufacturer" produces multiple pain pump models with distinct features and capacities, each of which is sold and marketed differently.

Under the standards enunciated by Federal Rule of Civil Procedure 8 and the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), Plaintiffs have failed to plead enough facts to make the claims set forth in the Complaint "plausible" not just possible, and thus clearly fall short of satisfying the factual burden necessary to state a claim in this case. Based on these egregious pleading deficiencies, Breg requests that the Court dismiss with prejudice all of Plaintiffs' claims against it. Plaintiffs have had ample opportunity to obtain and review their medical records and other documentation to identify both the pain pump as well as the proper pain pump manufacturer. Plaintiffs' Complaint was filed on September 30, 2009; it was not served on Breg until January 27, 2010. Leave to amend or to conduct discovery would be improper and cause only further delay and prejudice.

This motion is based upon the supporting Memorandum of Points and Authorities, the Court's file and any additional proceedings related to this motion.

DATED this 9th day of February, 2010.

BOWMAN AND BROOKE LLP

By: /s/ Lori A. Zirkle
_____
Lori A. Zirkle
2901 North Central Avenue, Suite 1600
Phoenix, Arizona 85012
Attorneys for Defendant Breg, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

This lawsuit arises out of Plaintiffs' alleged use of local infusion pain pumps after arthroscopic shoulder surgeries. (Compl., Doc. 1, at ¶¶ 2-5.) Plaintiffs allege that orthopedic surgeons implanted post-operative pain pumps that injected local anesthetic into their shoulder joints. (Id.) Plaintiffs allege that the use of pain pumps and the injection of anesthetics into the shoulder joint following surgery can result in glenohumeral chondrolysis. (Id. at ¶ 42.) Although only one manufacturer's pain pump is at issue per Plaintiff per surgery, Plaintiffs sued twelve entities, collectively calling them "Defendant Pain Pump Manufacturers" even though some of the entities named do not manufacture pumps (Id. at ¶ 16.)  The Complaint is devoid of any critical facts such as which products were used for Peterson or Ricks' surgeries.  (Id. ad passim)

Instead of properly investigating and pleading their claims, Plaintiffs seek to shift the burden onto Breg and the other pump Defendants to show which entity manufactured the pain pumps at issue for Peterson and Ricks.  This needlessly burdens the Court and every Defendant, complicating and increasing the expense of this litigation.  Counsel for Plaintiffs apparently did not conduct a basic pre-filing review of the Plaintiffs' surgical records to ascertain the identity of the proper manufacturer Defendant or Defendants.  If permitted to conduct litigation in this manner, every separate pump Defendant must establish product identification for every surgery of every Plaintiff.  Each Defendant must gather the same surgical records pertaining to each Plaintiff, and must incur attorneys' fees to analyze those records to ascertain the identity of the proper manufacturing Defendant.  All of this activity improperly burdens Breg and this Court.  It is clear that the failure of Plaintiffs' counsel to conduct a pre-litigation records review and sue only the correct manufacturing Defendants needlessly and exponentially increases the cost and burden of litigation.

II.   ARGUMENT AND AUTHORITIES

A.   **Iqbal and Twombly Heightened the Rule 8 Pleading Standard.**

Federal Rule of Civil Procedure 8(a)(2) requires that in order to state a claim for relief, a pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." In interpreting Rule 8, courts from 1957 to 2008 followed the Conley standard, which applied Rule 8 to only require plaintiffs "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Recently, however, the Supreme Court's decisions in Iqbal and Twombly have heightened the general pleading standard delineated in Rule 8 to require that a Complaint contain well-pled factual allegations that make the claim against a defendant "plausible," not just possible. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. 556).

In Twombly, the Supreme Court held that conclusory allegations in support of the elements of a claim are not sufficient to show that the pleader is entitled to relief. 550 U.S. at 557. The court explained that:

> While a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. at 555 (internal citations omitted). The Twombly Court's interpretation of Rule 8 requires the pleader to make enough well-pled factual allegations to "raise a right to relief above the speculative level." Id. The court found that naked assertions in a Complaint of the elements of a claim, "but without further factual enhancement[,] stop[s] short of the line between possibility and plausibility of entitlement to relief." Id. at 557. The Court ultimately reversed the Court of Appeals' decision and reinstated the District Court's dismissal of the plaintiffs' Complaint, finding that dismissal of plaintiffs' Complaint was proper because the plaintiffs did not state enough facts to nudge their claims across the line from conceivable to plausible. Id. at 570.

Iqbal advances the Twombly decision in two important ways by (1) clarifying the Court's intention that the Twombly pleading standard apply to all federal civil actions; and (2) setting forth a two-part framework for use in the determination of whether a pleading states a claim. Iqbal, 129 S. Ct. at 1953. First, Iqbal makes very clear that the heightened Twombly pleading standard "expounded the pleading standard for all civil actions." Id. All cases governed by the Federal Rules of Civil Procedure now fall within the broad reach of Iqbal/Twombly.

Second, the Court in Iqbal set up a road map to aid courts in determining when a litigant has sufficiently stated a claim. The first step in the analysis is to identify any conclusory pleadings. Id. at 1950. Pleadings that are factually or legally conclusory are not entitled to a presumption of truth and must be supported by well-pled factual allegations. Id. "Threadbare recitals of the elements of a claim, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555). Where a pleading contains well-pled factual allegations, the second step in the analysis, is to "assume their veracity and determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The Court went on to state that the standard for plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).

Applying this test to the facts in Iqbal, the Court determined that plaintiff had not "nudged his claims of invidious discrimination across the line from conceivable to plausible." Id. at 1950–51. The Court found that formulaic recitation of the elements of a constitutional discrimination claim did not trigger an assumption of truth. Id. at 1951. For instance, the Court determined that the following statements were conclusory: "Ashcroft was the 'principal architect'" and that

"petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions . . ., solely on account of [his] religion, race, and/or national origin . . . ." Id.

The Ninth Circuit Court of Appeals has embraced and applied the Iqbal/Twombly standard. See Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."); see also Longariello v. Phoenix Union High Sch. Dist., CV-09-1606-PHX-LOA, 2009 WL 4827014, *2 (D. Ariz. Dec. 15, 2009).

District Courts nationwide have begun to apply the Iqbal/Twombly standard in the context of medical device and pharmaceutical cases to require greater manufacturer-specific factual pleading in order to state a claim. For instance in Wolicki-Gables v. Arrow International, Inc., No. 8:08-CV-151-T-17MSS, 2008 WL 2773721, at *2 (M.D. Fla. June 17, 2008), plaintiff did not specifically identify the "implantable drug delivery system" it alleged caused plaintiff's injury.[1] As to negligence, defendants argued that the existence of a duty was not sufficiently pled where there was no factual basis pled that identified a relationship between the defendants and the product. Id. Plaintiff conceded the point, asserted that it had documents that would allow it to make an identification, and the court dismissed the claim granting leave to amend to specifically identify the medical device in question. Id. at *3. The court came to the same result with regard to plaintiff's strict liability claim finding that "the occurrence of symptoms without more [factual allegations], does not plausibly suggest a defect." Id. at *2.

---

[1] Plaintiff alleged that the device was manufactured by Arrow-Codman, but did not identify the specific device at issue. Further, Plaintiff did not plead the factual basis for the relationship between defendants Codman and Johnson & Johnson and the device. 2008 WL 2773721, at *3.

Additionally, in Sherman v. Stryker Corp., No. SACV 09-224 JVS (ANX), 2009 WL 2241664, at *4 (C.D. Cal. Mar. 30, 2009), a pain pump case where plaintiff alleged that she developed glenohumeral chondrolysis, the court dismissed all claims against AstraZeneca, Hospira, and Abbott Laboratories where plaintiff did not allege the names and types of medications administered. Id. The court found that plaintiff merely generally alleged that she received doses of "anesthetics," "anesthetic drugs," and "pain relief drugs." Id. The court dismissed plaintiff's claims against AstraZeneca, Hospira, and Abbott with prejudice holding that plaintiff had not alleged enough facts to show causation or liability. Id. Plaintiff at most alleged that defendants were part of many manufacturers that made medications that could have been administered to plaintiff. Id. at *4–5. The court also dismissed plaintiff's claims against Stryker and allowed plaintiff twenty days to re-plead claims against that defendant. Id. at *5.

Most recently in Dittman v. DJO, LLC, et. al., No. 08-cv-02791, 2009 WL 3246128, *3 (D. Colo. Oct. 5, 2009), another pain pump case where plaintiff alleged that she developed glenohumeral chondrolysis, the court dismissed all claims against AstraZeneca and Abbott Laboratories where plaintiff did not allege the names and types of medications allegedly administered through the pain pump to plaintiff. The court determined that plaintiff, in not naming a product and failing to allege that defendants' products were actually used, had not sufficiently alleged that the products could have caused his injury. Id. The court went on to find that:

> This deficiency is fatal to the claim. Plaintiff has no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury. This mere possibility, *i.e.*, that the medicine used could have been made by these defendants, rather than by any number of other manufacturers of anesthesia drugs, is not adequate to state a claim under the prevailing standards as set forth by Twombly and Iqbal.

Id. The court dismissed plaintiff's claims against these defendants without leave to re-plead. Id.

. . .

B. **Plaintiffs' Complaint Fails to State a Claim Against Breg for Which Relief Can be Granted.**

Plaintiffs make no claims that allow this Court to draw a "plausible" inference that Breg is liable for Plaintiffs' injuries. See Iqbal, 129 S. Ct. at 1949. Plaintiffs attempt to state causes of action in negligence, strict liability, breach of express warranty, breach of implied warranty, loss of consortium, and violation of state consumer fraud and deceptive trade practices acts. To establish liability, a necessary and common element of each claim is that Plaintiffs identify a Breg product that each of the Plaintiffs used. Plaintiffs' Complaint, however, does not state enough well-pled facts to establish that Breg manufactured the "pain pump" allegedly at issue in the surgeries of either of the Plaintiffs.

The first step in this Rule 8 analysis as outlined by the Court in Iqbal, is to determine if any of the allegations in Plaintiffs' Complaint are conclusory. Id. at 1950. Pleadings that are factually or legally conclusory are not entitled to a presumption of truth and must be supported by well-pled factual allegations. Id. at 1949. Plaintiffs make only a few allegations that arguably can give rise to a possibility that Breg manufactured the pump they used:

> Upon information and belief, a "pain pump" was used to inject a local anesthetic product directly into Plaintiff's [ ] shoulder on a continuous basis following surgery. (Compl. at ¶ 2, 3, 5.)

> Defendants Breg, DJO Defendants, I-Flow, Stryker Defendants, Moog, Curlin, Sgarlato Defendants, and Sorenson are collectively referred to as "Defendant Pain Pump Manufacturers." (Compl. at ¶ 16.)

> At all relevant times, Defendant Pain Pump Manufacturers designed, manufactured, marketed, and distributed a product called a "pain pump," which is a medical device that delivers, via catheter, continuous doses of pain relief medication directly into the glenohumeral joint. (Compl. at ¶32).

> The pain pumps deliver anesthetic pain medication, such as local anesthetic products into the glenohumeral joint for 72 hours or more immediately following arthroscopic or open shoulder surgery. (Compl. at ¶ 33.)

These are the only manufacturer-related allegations that Plaintiffs make, and none give rise to a plausible inference that Breg was in fact, the manufacturer of the "pain pump" that was inserted into Peterson or Ricks' shoulders. Each of the statements cited is formulaic and conclusory. Plaintiffs use the term "Defendant Pain Pump Manufacturers" in the context of these statements to refer to twelve different Defendants. Plaintiffs then state merely that Breg and the pump Defendants manufacture pumps, but never allege that Breg manufactured the pump used in Peterson or Ricks' surgeries. Factually conclusory statements like those cited **do not** give rise to a presumption of truth, and require support from well-pled factual allegations. Nonetheless, Plaintiffs fail entirely to further support their claims with fact. Noticeably, Plaintiffs do not allege the name of the manufacturer of the pump, the pump model, model number, flow rate, capacity, or existence of additional distinguishing pump features such as whether it had a bolus, whether it was patient controlled or a continuous infusion pump, whether it was electric or spring loaded, what length of time the physician ordered for the use of the pump, etc. (These characteristics can be gleaned from a basic review of the Plaintiffs' surgical records.) Without such additional well-pled factual allegations in support of any of the Plaintiffs' claims, Plaintiffs' Complaint does not properly state a claim against Breg or any of its co-Defendants. No court can plausibly infer from a statement such as Plaintiffs make here – "a 'pain pump' was used" – that Breg manufactured any of the pain pumps in question.

Instead of properly investigating and pleading their claims, counsel for Plaintiffs seeks to shift the burden onto Breg and the other pump Defendants to review each Plaintiff's records to show who manufactured the pain pump at issue. This burden of law, time, and expense, however, clearly belongs to the Plaintiffs and easily could have been satisfied by a proper pre-litigation records review. Such a review is an essential requirement for any counsel prior to signing a Complaint. Indeed, the <u>Twombly</u> Court found that "something beyond the mere possibility of

loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people . . . .'" Twombly, 550 U.S. at 557-58 (quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005)). Furthermore, the Supreme Court intends for basic deficiencies in pleading to "be exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558.

Plaintiffs' Complaint presents this Court with the scenario contemplated by the Supreme Court in Iqbal and Twombly. Because Plaintiffs have made no allegations that give rise to a plausible inference that Breg or any other Defendants manufactured the pain pumps specifically used in each Plaintiff's surgery, and because there are no well-pled factual allegations that give rise to a plausible inference as to the identity of the correct manufacturer Defendant, this Court should dismiss all of Plaintiffs' claims.

C. **The Court Should Not Permit Plaintiffs Leave to Amend or to Conduct Discovery.**

Although Rule 15(a) provides that a party may amend its pleading with leave of the court and that "[t]he court should freely give leave when justice so requires," the district court enjoys significant latitude in deciding whether to grant leave to amend. Fed. R. Civ. P. 15(a); Swanson v. United States Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996). Grounds for denial of leave include "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendment previously allowed, or undue prejudice to the opposing party . . . [and] futility of amendment." Blau v. America's Servicing Co., No. CV 08-773-PHX-MHM, 2008 WL 3845383 *1 (D. Ariz. Aug. 18, 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Moreover, the Federal Rules of Civil Procedure require attorneys and their clients to "Stop, Think, Investigate, and Research" before filing papers to initiate a suit or to conduct litigation. Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987).

. . .

This Court should exercise its broad discretion to dismiss the claims against Breg without allowing leave to amend. Plaintiffs are tellingly unable to make specific allegations with respect to the pain pump and the appropriate pain pump Defendant. Even if they filed their joint Complaint without specificity to allow themselves additional time to review medical records and determine the proper Defendant, they have had four months to undertake these investigations and file amended pleadings before serving Breg with the Complaint. Yet, despite the passage of ample time, Plaintiffs are still unable to plead sufficient facts to support a reasonable inference of liability as required by Twomby and Iqbal. To the contrary, Plaintiffs have served a Complaint that pleads insufficient facts as to multiple pain pump Defendants (and multiple anesthetic Defendants), presumably with the intent to sort out the correct parties through discovery – an approach unequivocally rejected by the Supreme Court. See Iqbal, 129 S. Ct. at 1954 ("because [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise"); see also Sherman, 2009 WL 2241664, at *4-5 (explicitly granting "the motions to dismiss the case as to Abbott and AstraZeneca," after refusing Sherman's request for additional discovery); In re Rezulin Prods. Liab. Litig., 168 F. Supp. 2d 136, 141 (S.D.N.Y. 2001) ("Granting discovery . . . would allow plaintiffs to name anyone as a defendant in a lawsuit without making the allegations necessary to state a claim upon which relief might be granted and then to seek discovery in hope of finding a basis for a claim.") This Court should likewise reject any request for discovery here.

Because Plaintiffs had ample opportunity to determine product identification before filing their joint Complaint – and for another four months after the joint Complaint was filed but prior to service – further leave to amend or to conduct discovery would be improper under Iqbal and cause only further delay and prejudice to Breg. Accordingly, the Court should dismiss Plaintiffs' Complaint without leave to amend.

III.   **CONCLUSION**

Plaintiffs seek to escape the burden of the basic pre-litigation review process required of every plaintiff initiating a lawsuit. Plaintiffs have generally and

| | |
|---|---|
| 1 | insufficiently alleged claims against all of the pump Defendants even though only |
| 2 | one Defendant per Plaintiff per surgery could possibly be liable for each Plaintiff's |
| 3 | alleged damages.  Without properly identifying any product in their Complaint, |
| 4 | Plaintiffs have not stated a claim against Breg for any cause of action. |
| 5 |      For the reasons set forth above, Breg respectfully asserts that Plaintiffs have |
| 6 | failed to state any claim on behalf of any of the Plaintiffs for which relief can be |
| 7 | granted and requests that the Court grant this motion and dismiss Plaintiffs' claims |
| 8 | in their entirety with prejudice. |
| 9 |      DATED this 9th day of February, 2010. |

BOWMAN AND BROOKE LLP

By: /s/ Lori A. Zirkle
Lori A. Zirkle
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona 85012
lori.zirkle@bowmanandbrooke.com

Attorneys for Defendant Breg, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of February, 2010, I electronically filed the foregoing document with the Clerk's Office using the CM/ECF System, which will send notification of such filing to all CM/ECF registrants for this case.

_____/s/ Lisa C. Jahnke_____