1  ROGER N. MORRIS (BAR NO. 012821)
   Email: roger.morris@quarles.com
2  KEVIN QUIGLEY (BAR NO. 015972)
   Email: kevin.quigley@quarles.com
3  CHRISTINE CASSETTA (BAR NO. 015663)
   Email: christine.cassetta@quarles.com
4  QUARLES & BRADY, LLP
   One Renaissance Square
5  Two North Central Avenue
   Phoenix, Arizona 85004-2391
6  T: (602)229-5200

7  JAMES W. HUSTON (BAR NO. 115596)
   JHuston@mofo.com
8  ERIN M. BOSMAN (BAR NO. 204987)
   EBosman@mofo.com
9  MORRISON & FOERSTER, LLP
   12531 High Bluff Drive, Suite 100
10 San Diego, California 92130
   T: (858) 720-5100
11
   Attorneys for Defendants
12 APP PHARMACEUTICALS, INC.
   APP PHARMACEUTICALS, LLC
13 ABRAXIS BIOSCIENCE, INC.
   ABRAXIS BIOSCIENCE, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Fredrick C. Peterson and Amelia Peterson, husband and wife; Douglas F. Ricks, a single individual,<br><br>Plaintiffs,<br><br>v.<br><br>Breg, Inc.; DJO Incorporated; DJO, LLC; I-Flow Corporation; Stryker Corporation; Stryker Sales Corporation; Moog, Inc.; Curlin Medical Inc.; Sgarlato Laboratories, Inc.; Sgarlato R.P., Inc.; Sgarlato Med LLC; Sorenson Medical Products, Inc.; AstraZeneca PLC; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Zeneca Holdings, Inc.; Abbott Laboratories; Hospira Worldwide, Inc.; APP Pharmaceuticals, LLC; APP Pharmaceuticals, Inc.; Abraxis Bioscience, LLC; Abraxis Bioscience, Inc.; and Does 1-50,<br><br>Defendants. | Case No. CV 09-2044-PHX-JWS<br><br>**APP DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

Defendants APP Pharmaceuticals, Inc., APP Pharmaceuticals, LLC, Abraxis BioScience, Inc., and Abraxis BioScience, LLC (collectively, "APP" or the "APP Defendants"), hereby submit the following Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the plaintiffs have failed to meet the minimum pleading requirements of Federal Rule of Civil Procedure Rule 8(a)(2) by not identifying the medication or the specific manufacturer or distributor of the medication that allegedly caused their harm.

## I. INTRODUCTION

This lawsuit is nothing more than a fishing expedition against APP. Although the Complaint makes repeated references to "local anesthetic products," the Complaint does not specifically link APP to the local anesthetic products allegedly used in plaintiffs' surgeries. The only allegation attempting to link APP to any anesthetic states that the "APP Defendants research, develop, manufacture, and market pharmaceutical products, including local anesthetic drugs used in the pain pumps manufactured and marketed by Defendant Pain Pump Manufacturers." (Compl. ¶ 20.) Despite their failure to link APP to the products that allegedly injured them, plaintiffs have filed their Complaint seeking compensation from APP, ignoring the fact that they failed to meet the minimum pleading standards of Federal Rule of Civil Procedure 8(a). Moreover, plaintiff Fredrick C. Peterson's claims related to his right shoulder surgery have not been brought within the applicable statute of limitations period. Further, plaintiffs' breach of implied warranties claim merges into their strict liability claim under Arizona law. The deficiencies in the plaintiffs' claims also render the plaintiff spouse's loss of consortium claim deficient. Plaintiffs have failed to state a viable cause of action against APP and thus the Complaint warrants dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. PROCEDURAL HISTORY AND STATEMENT OF FACTS

This lawsuit was filed by three plaintiffs on September 30, 2009. According to the Complaint, plaintiffs underwent shoulder surgeries on the following dates:

- Fredrick C. Peterson had surgery on his right shoulder on December 5, 2006 (Compl. ¶ 3), and his left shoulder on November 17, 2008 (*Id.* ¶ 2); and
- Douglas F. Ricks had surgery on his right shoulder some time in "October 2007" (*id.* ¶ 5).

Following each surgery, each plaintiff's surgeon allegedly implanted a pain pump that injected a continuous flow of "a local anesthetic product" into the shoulder. (*Id.* ¶¶ 2-3, 5.) Each plaintiff alleges that "[s]ince the shoulder surgery, Plaintiff has continued to suffer pain and, upon information and belief, has developed Postarthroscopic Glenohumeral Chondrolysis." (*Id.*) Additionally, plaintiff Fredrick C. Peterson's spouse, Amelia Peterson, has alleged loss of consortium.

The Complaint fails to make the required causal link between APP and the product(s) that allegedly caused plaintiffs' harm. Specifically, the Complaint alleges simply that a "'pain pump' was used to inject a local anesthetic product directly into [plaintiffs'] . . . shoulder joint," (*id.*), and that "[l]ocal anesthetic products are commonly used in pain pump devices, including the pain pumps used following Plaintiffs' shoulder surgeries" (*id.* ¶ 36). While the Complaint alleges that "Defendant Anesthetic Manufacturers designed, manufactured, marketed, and distributed [local anesthetic products]," there is not one allegation actually tying any one of the multiple pharmaceutical defendants to the specific drug allegedly used in plaintiffs' pain pumps. (*Id.* ¶ 35.)

Based on these limited allegations, plaintiffs assert the following causes of action against the APP Defendants: Negligence and Negligence Per Se (First Cause of Action); Strict Products Liability (Second Cause of Action); Breach of Express Warranty (Third Cause of Action); Breach of Implied Warranties (Fourth Cause of Action); and Loss of Consortium (Fifth Cause of Action).[1]

---

[1] The Sixth Cause of Action (Violation of State Consumer Fraud and Deceptive Trade Practices Acts) has only been brought against Defendant Pain Pump Manufacturers, and not against the APP Defendants.

### III. LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move the Court to dismiss any claim upon which, as a matter of law based on the allegations in the complaint, relief cannot be granted. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 558 (9th Cir. 1995) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Although the complaint's factual allegations are to be accepted as true and viewed in the light most favorable to the nonmoving party, the allegations "must be enough to raise a right to relief above the speculative level." *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To avoid dismissal under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* (*quoting Twombly*, 550 U.S. at 570); *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir. 2007) (dismissal is proper in the "absence of sufficient facts alleged to support a cognizable legal theory"). Stated differently, "a plaintiff's obligation to provide the grounds of her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action." *Rick-Mik Enters. v. Equilon Enters., LLC*, 532 F.3d 963, 971 (9th Cir. 2008) (*citing Twombly*, 550 U.S. at 555); *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inferences are insufficient" to state a claim for relief). A "wholly conclusory statement of claim" should not "survive a motion to dismiss whenever the pleadings [leave] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561 (internal quotation omitted). The plaintiff must set forth facts in the complaint that "nudge[] [his or her] claims across the line from conceivable to plausible." *Id.* at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Furthermore, Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation . . . [and] does not empower [plaintiff] to plead

the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 1949, 1954.

### IV. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

In a products liability case, causation must be established by showing that the plaintiff's injuries were caused by exposure to a specific product manufactured, distributed, or sold by the defendant. *Hyde v. Owens-Corning Fiberglass Corp.*, 751 F. Supp. 832 (D. Ariz. 1990) (plaintiff's allegations that he worked around a certain type of pipe covering during years when defendant manufactured that pipe covering were insufficient where plaintiff never specifically identified defendant as the manufacturer of the pipe covering with which he was in contact). Without evidence of a causal connection between the injury alleged and the defendant's product, a claim does not accrue. *Id.*; *see also White v. Celotex Corp.*, 907 F.2d 104, 106 (9th Cir. 1990) (dismissing claims where "[t]he fact that Defendants were making or marketing asbestos between 1957 and 1983 did not constitute evidence that they had done so in relation to the asbestos in any building in which [plaintiff] may have come in contact"). Absent identification of the offending product and of the product's manufacturer, distributor or seller, the plaintiff is foreclosed from proving the basic causation element of a product liability case and the claim must fail. *White*, 907 F.2d at 106; *Bockrath v. Aldrich Chem. Co., Inc.*, 980 P.2d 398, 405 (Cal. 1999) (failure to identify which product or manufacturer caused alleged injury precludes recovery on either negligence or strict liability claims).

Based on these principles, plaintiffs' Complaint fails to state a claim upon which relief may be granted by failing to "establish a sufficient connection between the product" and APP in two ways: (1) the Complaint does not specifically allege which "local anesthetic product" was injected into plaintiffs' shoulders; and (2) the Complaint does not adequately identify the APP Defendants as the manufacturer or distributor of the specific medication that was injected into plaintiffs' shoulders, allegedly causing their injuries. By virtue of these failures,

plaintiffs have failed to "nudge[] [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### A.  Plaintiffs Fail To Establish A Causal Link Between APP And The Medication That Allegedly Caused Their Injuries

The allegations asserted by plaintiffs all arise out of plaintiff Fredrick C. Peterson's and plaintiff Douglas F. Ricks's alleged shoulder surgeries and the subsequent insertion of a pain pump that "was used to inject a local anesthetic product directly into [plaintiffs'] . . . shoulder joint." (Compl. ¶¶ 2-3, 5.) While plaintiffs allege that "[l]ocal anesthetic products are commonly used in pain pump devices, including the pain pumps used following Plaintiffs' shoulder surgeries," they never allege specifically which local anesthetic products are at issue here. (*Id.* ¶ 36.) Plaintiffs also allege that "Defendant Anesthetic Manufacturers designed, manufactured, marketed, and distributed [local anesthetic products]," (*id.* ¶ 35), but never assert that any defendant or defendants were responsible for the local anesthetic products allegedly used in their pain pumps (*see id.* generally).

Under the federal pleading standard, such failure warrants dismissal of plaintiffs' claims. Plaintiffs presumably know the identity of their doctors and presumably have access to their complete medical records. Yet there are no allegations of any efforts made by the plaintiffs in the many years since their surgeries to identify the medications allegedly used in the pain pumps. Even the plaintiff with the most recent surgery (Fredrick C. Peterson on November 17, 2008) has had one year from the date of his last surgery to try to ascertain this information, while the other injured plaintiff (Douglas F. Ricks) has had two years since his surgery in October 2007 to identify the product administered to him. (*Id.* ¶¶ 2, 5.) None of the plaintiffs have done so.

Plaintiffs' failure to designate the product alleged to be defective is fatal to their claims against the APP Defendants, because it is unclear what product caused their injuries—let alone whether that product is actually attributable to the APP Defendants. Plaintiffs have relied on generic allegations throughout the Complaint to identify the medications, including "pain relief medication" and "local anesthetic products." (*See, e.g.*, Compl. ¶¶ 32, 34.)

While these alleged facts may be "consistent with a defendant's liability, [the complaint] stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949. Such failure falls short of meeting the goals of Rule 8(a), the purpose of which is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs' failure to link APP to the alleged drugs further fails to establish the required connection between a product and its alleged manufacturer or supplier, which is necessary to support causation in a products liability action. *White*, 907 F.2d at 106. Because plaintiffs have failed to identify the drug used in the pain pumps that allegedly caused their injury, the Complaint should be dismissed.

Indeed, in similar cases also arising out of alleged injuries by pain pumps that injected medication into the plaintiffs' shoulders, four federal district courts recently granted motions to dismiss in favor of anesthetic manufacturers pursuant to Rule 12(b)(6). *Sherman v. Stryker Corp.*, No. SACV 09-224 JVS (ANx), 2009 U.S. Dist. LEXIS 34105 (C.D. Cal. Mar. 30, 2009); *Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM, 2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009); *Gilmore v. DJO, Inc.*, No. 2:08-cv-1252-HRH, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. Oct. 15, 2009); *Combs v. Stryker Corp.*, Case No. 2:09-cv-02018-JAM-GGH, 2009 U.S. Dist. LEXIS 115920 (E.D. Cal. Dec. 14, 2009).[2] Just as in this case, the plaintiff in *Sherman* failed to identify the pharmaceutical defendant responsible for the drug at issue, relying instead on allegations asserted against multiple pharmaceutical defendants. *Sherman*, 2009 U.S. Dist. LEXIS 34105, at *12. The *Sherman* court held that "there are not even enough facts for a reasonable inference of liability, since there is no allegation that [a co-defendant] and AstraZeneca produced the medication at issue." *Id.* at *14. In granting the motion to dismiss, the court relied on the United States Supreme Court decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Sherman*, 2009 U.S. Dist.

---

[2] In addition, this court has granted APP's motion to dismiss in two cases where the plaintiffs failed to file any responsive pleading. *Eggler v. I-Flow Inc., et al.*, No. 2:09-cv-00040-SRB; *Hannigan v. I-Flow Inc., et al.*, No. 2:09-cv-00042-SRB.

LEXIS 34105, at *4, *14 (a plaintiff must state "enough facts to state a claim for relief that is plausible on its face").³ Because the *Sherman* complaint failed to allege that AstraZeneca "produced the medication at issue," it failed, under the standards promulgated by *Twombly*, to state a claim based on use of an AstraZeneca product, which was only "one of many different types or bran[d]s of medications that might have been administered to [plaintiff]." *Id.* Similarly, the *Dittman* court dismissed plaintiff's claims against the anesthetic manufacturers on the inadequacy of the claim "that the medicine used could have been made by these defendants, rather than by any number of other manufacturers of anesthesia drugs." *Dittman*, 2009 U.S. Dist. LEXIS 97106, at *9. The *Gilmore* court dismissed the defendant anesthetic manufacturer where only two paragraphs in the complaint specifically mentioned that defendant. *Gilmore*, 2009 U.S. Dist. LEXIS 96690, at *9-10. In addition, the *Combs* court, citing *Sherman*, dismissed plaintiffs' claims against the anesthetic manufacturer because "any number of anesthetic drugs could have been given and Plaintiffs are merely speculating that Defendants could be liable." *Combs*, 2009 U.S. Dist. LEXIS 115920, at *7. Under these standards, plaintiffs' Complaint should be dismissed.

Moreover, to the extent that plaintiffs intend to rely on the discovery process in order to identify the medications (or the manufacturers of those medications), such a "fishing expedition" should not be permitted by the Court. *Twombly*, 550 U.S. at 577. The plaintiffs should not be permitted to wait until after discovery to demonstrate to this Court whether their speculative claims asserted against the APP Defendants have any basis. Plaintiffs fail to identify which "local anesthetic product" was allegedly used in their pain pumps, and they fail to identify which pharmaceutical manufacturer or distributor allegedly provided the medications used in the pain pumps. These two facts are obvious from the face of the

---

³ *Accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1954 (2009) (Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed me accusation" and "does not empower [plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss").

Complaint and they are sufficient to invoke the preclusive effect of Rule 12(b)(6) and to require that all plaintiffs' claims be dismissed.

### B. Plaintiff Fredrick C. Peterson's Negligence, Strict Products Liability, and Warranty Claims Related To His Right Shoulder Surgery Are Barred By The Statute Of Limitations

A plaintiff must bring a claim within the limitations period after accrual of the cause of action. *Ness v. Western Sec. Life Ins. Co.*, 851 P.2d 122, 125 (Ariz. 1992). Under Arizona law, the statute of limitations for negligence, products liability, and breach of warranty claims is two years. Ariz. Rev. Stat. §§ 12-542, 12-551. Section 12-551 states that a "product liability action . . . shall be commenced and prosecuted within the period prescribed in A.R.S. § 12-542." And A.R.S. § 12-542 provides that:

> Except as provided in section 12-551 there shall be commenced and prosecuted within two years after the cause of action accrues, and not afterward, the following actions: 1. For injuries done to the person of another including causes of action for medical malpractice . . . .

Accordingly, personal injury claims, including products liability, negligence, and breach of warranty claims, are governed by a two-year statute of limitations. *See Tyman v. Hintz Concrete, Inc.*, 148 P.3d 1146, 1147 (Ariz. 2006); *see also Gates v. La Belle's Distrib.*, 708 P.2d 114, 115 (Ariz. 1985). Arizona does recognize the discovery rule, which provides that "a plaintiff's cause of action does not accrue until the plaintiff knows, *or in the exercise of reasonable diligence, should know* of the facts underlying the cause of action." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995) (emphasis added).

Here, however, plaintiff Fredrick C. Peterson did not bring his negligence, strict products liability, and breach of warranty claims for the alleged injury related to the surgery performed on his right shoulder within two years of the surgery date. Rather, plaintiff waited many months after the expiration of this two-year period before bringing his claims against APP. Specifically, he alleges that he underwent right shoulder surgery on December 5, 2006 (Compl. ¶ 3), during which a pain pump "was used to inject a local anesthetic product directly into Plaintiff's right shoulder joint on a continuous basis following surgery" (*Id.*).

1   The local anesthetic product is injected for "72 hours or more immediately following . . .
2   surgery." (*Id.* ¶ 33.) He claims that "[s]ince the shoulder surgery, [he] has continued to
3   suffer pain and . . . has developed Postarthroscopic Glenohumeral Chondrolysis." (*Id.* ¶ 5)
4   Therefore, plaintiff Peterson's causes of action for negligence (Count I), strict products
5   liablity (Count II), breach of express warranty (Count III), and breach of implied warranties
6   (Count IV) accrued at some point between his surgery and "72 hours or more" afterwards.
7   Even if that period is as long as a week, and giving plaintiff Peterson the benefit the of the
8   latest date that the drug may have been administered, his statute of limitations for his right
9   shoulder surgery expired no later than December 12, 2008. Yet he chose not to file this
10  lawsuit until September 30, 2009—months after the statute of limitations had expired.

   Plaintiffs have attempted to plead the discovery rule, but their claim that "Plaintiffs
12  could not reasonably have known that the . . . injuries claimed herein were related in any way
13  to the use of the pain pump prior to the expiration of any alleged statute of limitations" is
14  superficial and insufficient. (Comp. ¶ 7.) The discovery rule extends beyond when plaintiffs
15  *did* know of the cause of their injuries to when they *should have* known this information.
16  *Gust*, 898 P.2d at 968; *see also Lawhon v. L.B.J. Inst. Supply*, 765 P.2d 1003, 1005 (Ariz.
17  1988) ("[C]ause of action does not accrue until a plaintiff discovers or by the exercise of
18  reasonable diligence should have discovered that he or she has been injured by the
19  defendant's negligent conduct."). It is implausible that neither of the injured plaintiffs here –
20  each with vastly differing surgery dates – were not on notice of the fact that their alleged
21  injury could be related to the conduct alleged in the complaint until just over two years before
22  the filing of this complaint. (Compl. ¶ 7 ("[I]n the alternative, Plaintiff [sic] could not have
23  known of the causal connection between her [sic] injuries and the pain pump prior to August
24  1, 2007").) Plaintiffs have not alleged any details regarding when in fact they did discover
25  this information, and the fact that each of the differently-situated plaintiffs relies on the same,
26  generic, catch-all discovery rule allegation (*See* Compl. ¶ 7) is highly suspect. Essentially,
27  plaintiffs have done nothing more than set forth the generic buzzwords related to the
28  discovery rule, which should be regarded by this Court with suspicion. Further, plaintiffs

argue that "in the alternative . . . [they] could not have known of the causaul connection between her [sic] injuries and the pain pump prior to August 1, 2007." (*Id.*) This date, however, is more than two years before the Complaint was filed, on September 30, 2009, and falls outside the statute of limitations period. Because plaintiff Fredrick C. Peterson failed to file his Complaint in a timely manner, his negligence, strict products liability, and warranty claims related to his right shoulder surgery are time-barred and should be dismissed. A.R.S. § 12-542.

### C. Plaintiffs' Breach of Implied Warranties Claim Should Be Dismissed As It Is Merged Into Their Strict Liability Claim

Under Arizona law, when a complaint alleges product liability claims under both strict liability and breach of implied warranties, "the theory of liability under implied warranty [is] merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall." *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1103 (D. Ariz. 2003). Plaintiffs' have alleged causes of action for both strict liability (Count II) and breach of implied warranties (Count IV). Plaintiffs' breach of implied warranties claim should be dismissed as it is merged into their strict liability claim under Arizona law. *Hearn*, 279 F. Supp. 2d at 1103.

### D. The Loss Of Consortium Claim Brought By Plaintiff Fredrick C. Peterson's Spouse Must Also Fail

Although the damages for loss of consortium claims are independent of the injured spouse's personal injury claim, the loss of consortium claim is a "derivative claim [and] all elements of the underlying [injured spouse's] cause must be proven before the claim can exist." *Barnes v. Outlaw*, 192 Ariz. 283, 286 (1998) (holding that a spouse need not be physically injured to recover for loss of consortium because requiring the underlying claim to be proven protects against fraudulent claims); *see also Lewis v. Mammoth Mt. Ski Area*, No. 1:07-CV-00497-OWW-GSA, 2009 U.S. Dist. LEXIS 13050, *42 (E.D. Cal. Feb 20, 2009) (the loss of consortium claim "stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury"). Accordingly, if a

defendant is not liable for the physical injury or disability of the spouse, it cannot be liable for the loss of consortium claim. *Barnes*, 192 Ariz. At 286. As established above, plaintiff Fredrick C. Peterson's causes of action against APP fail to state a claim. It follows that there is no basis for plaintiff Amelia Peterson's loss of consortium claim, which should be dismissed accordingly.

### V. CONCLUSION

Plaintiffs' failure to state a cause of action against APP is evidenced by the fact that they have not identified the medications that allegedly caused their injuries or the manufacturer or distributor of those medications. Moreover, plaintiff Fredrick C. Peterson has failed to bring his claims related to his right shoulder surgery within the applicable statute of limitations period. Further, plaintiffs' breach of implied warranties claim merges into their strict liability claim under Arizona law. The deficiencies in plaintiff Fredrick C. Peterson's claims also render his spouse's (plaintiff Amelia Peterson) loss of consortium claim deficient. The speculative nature of plaintiffs' claims against APP requires that each and every claim be dismissed pursuant to Rule 12(b)(6) with prejudice and without leave to amend.

Dated: February 16, 2010

By: /s/ Roger Morris
Roger N. Morris (#012821)
Kevin Quigley (#015972)
Christine Cassetta (#015663)
QUARLES & BRADY LLP
One Renaissance Square
Two North Central Avenue
Phoenix, Arizona 85004-2391

James W. Huston (#115596)
Erin M. Bosman (#204987)
MORRISON & FOERSTER, LLP
12531 High Bluff Drive, SUITE 100
San Diego, California 92130

Attorneys for Defendants
APP PHARMACEUTICALS, INC.
APP PHARMACEUTICALS, LLC
ABRAXIS BIOSCIENCE, INC.
ABRAXIS BIOSCIENCE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants:

>Lowell W. Finson, AZ Bar ID 010872
>lowellf@phillipslaw.ws
>Phillips & Associates
>20 East Thomas Road, Suite 2600
>Phoenix, Arizona 85012
>T. 602.258.8900
>F: 602.288.1632

*Attorneys for Plaintiffs*

/s/Geri Canacakos

CERTIFICATE OF SERVICE

QB\9771884.1