Michael J. O'Connor – 010399
moconnor@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
The Collier Center, 11th Floor
201 East Washington Street
Phoenix, Arizona 85004-2385
Telephone: (602) 262-5911

Attorneys for Defendants *Abbott Laboratories* and *Hospira, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Fredrick C. Peterson and Amelia Peterson, husband and wife; Douglas F. Ricks, a single individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Breg, Inc.; DJO Incorporated; DJO, LLC; I-Flow Corporation; Stryker Corporation; Stryker Sales Corporation; Moog, Inc.; Curlin Medical Inc.; Sgarlato Laboratories, Inc.; Sgarlato R.P., Inc.; Sgarlato Med LLC; Sorenson Medical Products, Inc.; AstraZeneca PLC; AstraZeneca Pharmaceuticals LP; AstraZeneca LP; Zeneca Holdings, Inc.; Abbott Laboratories; Hospira Worldwide, Inc.; APP Pharmaceuticals, LLC; APP Pharmaceuticals, inc.; Abraxis Bioscience, LLC; Abraxis Bioscience, Inc.; and Does 1-50,<br><br>Defendants. | No. 2:09-cv-02044-MEA<br><br>**DEFENDANTS ABBOTT LABORATORIES AND HOSPIRA, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12 (b)(6)**<br><br>**(Oral Argument Requested)** |

Defendants Abbott Laboratories ("Abbott") and Hospira, Inc. ("Hospira")[1], respectfully submit this Motion to Dismiss pursuant to Federal Rule of Civil

---

[1] Hospira was incorrectly named "Hospira Worldwide, Inc." in the caption and the Complaint.

3437178v1(60637.13)

Procedure 12(b)(6) as to all claims asserted by plaintiffs, Frederick C. Peterson, Amelia Peterson, and Douglas F. Ricks, (hereinafter collectively "plaintiffs") in this matter. This motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs in this products liability lawsuit have not pled facts sufficient to establish a viable cause of action against Abbott or Hospira. Specifically, although plaintiffs assert that Abbott and Hospira are two of several manufacturers of anesthetic drugs that are sometimes used in so-called "pain pumps," the Complaint does not allege that either company manufactured the anesthetic used in any of the pain pumps that caused the alleged injuries herein.[2]

Accordingly, Abbott and Hospira respectfully request that their Motion to Dismiss Plaintiffs' Complaint be granted.

---

[2] This lawsuit is brought on behalf of residents of Arizona (plaintiffs Frederick C. Peterson and Amelia Peterson) and Colorado (plaintiff Douglas F. Ricks) and involves allegations and claims that presumably took place in each plaintiff's home state. With regard to plaintiff Douglas F. Ricks' claims, pursuant to Arizona's choice-of-law rules, based on the information alleged in the Complaint, the law of Mr. Ricks' home state, Colorado, likely governs his claims. Arizona courts follow the Restatement (Second) of Conflict of Laws (1971) (Conflict of Laws Restatement) to determine the controlling law. Bates v. Superior Court (Nationwide Ins. Co.), 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988). Cases sounding in tort should be resolved under the law of the state having the most significant relationship to both the occurrence and the parties with respect to the particular issue. Conflict of Laws Restatement § 145(1). Factors taken into consideration include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Conflict of Laws Restatement § 145(2); Bates, 156 Ariz. at 49, 749 P.2d at 1370.

## II. THE COMPLAINT

The Complaint involves plaintiffs from two different states with different factual backgrounds. However, plaintiffs all seek recovery for their alleged injury under the same variety of legal theories.[3]

On or about December 5, 2006, plaintiff Frederick C. Peterson of Glendale, Arizona underwent arthroscopic surgery on his right shoulder at Metro Surgery Center in Phoenix, Arizona. (Complaint, ¶¶ 1, 3). On or about November 17, 2008, Mr. Peterson underwent arthroscopic surgery on his left shoulder at the same surgery center in Phoenix, Arizona. (*Id.*, ¶ 2). Following both surgeries, a "'pain pump' was used to inject a local anesthetic product" directly into each of Mr. Peterson's shoulders. (*Id.*, ¶ 2-3). As a result of and since the surgeries, the Complaint alleges, Mr. Peterson has "continued to suffer pain, and upon information and belief, has developed Post arthroscopic Glenohumeral Chondrolysis." (*Id.*).

On or about October 2007, plaintiff Douglas F. Ricks of Yuma, Colorado, underwent arthroscopic surgery on his right shoulder. (Complaint, ¶¶ 4-5). Following the surgery, a "'pain pump' was used to inject a local anesthetic product" directly into Mr. Ricks' shoulder. (*Id.*, ¶ 5). As a result of and since the surgeries, the Complaint alleges, Mr. Ricks has "continued to suffer pain, and upon information and belief, has developed Postarthroscopic Glenohumeral Chondrolysis." (*Id.*).

---

[3] The Complaint purports to state causes of action against all defendants for: (1) Negligence/Negligence Per Se; (2) Strict Products Liability; (3) Breach of Express Warranty; (4) Breach of Implied Warranties; and (5) Loss of Consortium. The loss of consortium claim is only asserted by "Plaintiff Amelia Peterson." (Complaint, ¶¶ 113-15). Plaintiffs also allege a cause of action against the "Defendant Pain Pump Manufacturers" only for Violation of State Consumer Fraud & Deceptive Trade Practices Acts.

The Complaint makes no allegation as to the identity of the manufacturer of the "local anesthetic product" used in any of the pain pumps implanted into plaintiffs' shoulders. Indeed, it is clear from the Complaint that plaintiffs haven't a clue what anesthetic medication was allegedly used in the pain pumps following their surgeries, as they vaguely and generally make reference to "a local anesthetic product," "local anesthetic drugs," "local anesthetic products," "pain relief medication," "anesthetic pain medications," "local anesthetic," "local anesthetics," and "anesthetic medications," (*See, e.g.*, *id*., ¶¶ 2-3, 5, 18-21, 32-36, 41-45, 51-52, 56, 58-60, 67-74, 76-77, 79-84, 90-91, 93, 95-96, 101-02, 104-05, and 107-09).[4] The Complaint merely alleges that (1) the "AstraZeneca Defendants," (2) Abbott, (3) Hospira, and (4) the "APP Defendants," (collectively referred to by plaintiffs as "Defendant Anesthetic Manufacturers"), research, develop, manufacture, and market pharmaceutical products, including "local anesthetic products used in the pain pumps." (*Id*., ¶¶ 18-21.) However, <u>none</u> of these named entities are specifically alleged to have manufactured the particular anesthetic medications in the pain pumps used in any of the plaintiffs' surgeries. Rather, in their Complaint plaintiffs feebly attempt to make the impossible and conclusory allegation that the anesthetic medications used in the pain pumps implanted into each of the plaintiffs' shoulders following each surgery were

---

[4] Plaintiffs' lack of knowledge of the medication to which they were allegedly exposed is further evidenced by plaintiffs' definition of "local anesthetic products," referring collectively to "Marcaine and/or Sensorcaine and/or bupivicaine and/or Xylocaine and/or lidocaine and/or lignocaine and/or Naropin and/or ropivicaine and/or Carbocaine and/or Polocaine and/or mepivicaine." (Complaint, ¶ 35). It is clear from this and the other allegations in the Complaint that plaintiffs do not know specifically what anesthetic medication was allegedly used in the pain pumps following their surgeries and therefore, do not and cannot allege specifically which manufacturer made the anesthetic allegedly used.

apparently manufactured by all of the anesthetic defendants. (*Id.*, ¶ 35-36). This defect is fatal to all causes of action in the Complaint.

## III. ARGUMENT

### A. Under *Twombly* and Its Progeny, a Complaint Must State More Than Mere Conclusory Allegations and Blanket Assertions to Survive a 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) sets the standard for motions to dismiss for failure to adequately allege a claim. In 2007, the Supreme Court reviewed this rule again and interpreted it to require more than just conclusory allegations in pleadings. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The Supreme Court ruled that a plausibility standard under Rule 12(b)(6) is to be applied and requires more than a plaintiff's characterizations or a formulaic recitation of the elements of a cause of action:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' *requires more than labels and conclusions, and a formulaic* recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Id.* at 1964-65 (emphasis added) (citations omitted).

Importantly, under the *Twombly* standard, a plaintiff must make a "showing," rather than a blanket assertion, of entitlement to relief. *Id.* at 1965, n.3 (citations omitted). The court is not required to accept conclusory allegations, unsupported conclusions, or unwarranted inferences, even if cast in the form of factual allegations, when considering a motion to dismiss. *Id.* at 1965; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (discussing *Twombly*, among others, and holding "for a complaint to survive a

motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citation omitted); *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss.") (citing *Twombly*).

The Supreme Court further defined this rigorous pleading standard in *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1940 (2009) (applying *Twombly*). In *Iqbal*, the Court held that a court considering a motion to dismiss may first identify allegations that are no more than conclusions, and therefore not entitled to the assumption of truth, finding that "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1940. Next, the Court opined, a court may examine the well-pleaded factual allegations and determine, assuming their veracity, "whether they plausibly give rise to an entitlement to relief." *Id.* at 1940-41 (citing *Twombly*). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (citing *Twombly*).

### B. The Complaint Must Be Dismissed As To Abbott And Hospira Because It Does Not Allege That Either Company's Product Played Any Role In Plaintiffs' Injuries.

It is axiomatic that a tort defendant is liable only when its act or omission has caused injury to the plaintiff.[5] *See, e.g., Saucedo ex rel. Sinaloa v. Salvation*

---

[5] Plaintiffs had their surgeries in their home states, were allegedly injured there, and many of the key witnesses relating to plaintiffs' past and current treatment and care are likely located in their home states. Whether the adequacy of plaintiffs' allegations relating to product identification relate to a procedural (governed by Arizona law) or substantive (governed by each plaintiff's home state's law) right, as is evident from the case law cited herein, each state requires dismissal of plaintiffs' Complaint for failure to allege that any plaintiff was injured by Abbott's or Hospira's products.

*Army*, 200 Ariz. 179, 183, 24 P.3d 1274, 1278 (Ariz. App. Div. 2001) ("To establish fault, a plaintiff must prove that the defendant's negligence proximately caused the plaintiff's injury.") (citations omitted); *see also Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004) ("In cases involving negligent torts, a common law prima facie cause of action requires the proof of four elements: a plaintiff must show that first, the defendant owed a legal duty of care; second, the defendant breached that duty; third, the plaintiff was injured; and fourth, the defendant's breach caused that injury."). In products liability actions, this requires proof by the plaintiff that the defendant's product caused his or her injury. *See, e.g., Antone v. Greater Arizona Auto Auction*, 155 P.3d 1074, 1076 (Ariz. App. Div. 2007); *Benshoof v. Nat'l Gypsum Co.,* 761 F. Supp. 677, 680 (D. Ariz. 1991) (granting summary judgment where "plaintiff could not proffer any evidence which tended to demonstrate exposure to any of the products manufactured by the moving party"); *White v. Celotex Corp.,* 907 F.2d 104, 106 (9th Cir. 1990) (affirming summary judgment in favor of defendants where plaintiff "proffered no evidence that [plaintiff] had been exposed to any particular product produced or distributed by the defendants."); *see also Vigil***,** 103 P.3d at 325; *Lui v. Barnhart*, 987 P.2d 942 (Colo. App. 1999) ("[N]egligence requires proof that a defendant's conduct falls below an acceptable standard of care. Necessarily, this involves proof of fault."); *Weiszmann v. Kirkland and Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) ("[W]here, as here, there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim.").

Plaintiffs have made no such allegations regarding the anesthetic medication used in any of the pain pumps here. Put simply, the Complaint does not identify the manufacturer that allegedly produced the anesthetic medications

to which any of the plaintiffs were exposed. Instead, plaintiffs merely allege generally that the Defendant Anesthetic Manufacturers research, develop, manufacture, and market pharmaceutical products, including "local anesthetic products used in the pain pumps." (*Id*., ¶¶ 18-21).[6] The Complaint further attempts to allege that the anesthetic medication used in each of plaintiffs' surgeries was manufactured by <u>all</u> of the Defendant Anesthetic Manufacturers. (*Id.*, ¶ 35-36). The Complaint does not even allege that the facilities where plaintiffs received treatment acquired any of the subject anesthetic medications from Abbott or Hospira. These allegations hardly link Abbott or Hospira to any plaintiff's alleged injury.

Indeed, two cases with nearly identical, non-specific allegations related to "pain relief drugs" were recently dismissed as to Hospira and Abbott. In *Sherman v. Stryker Corp.*, 2009 WL 2241664 *4 (C.D. Calif. March 30, 2009), plaintiff named Hospira, Abbott Laboratories (collectively by the court, "Abbott"), and AstraZeneca as manufacturers of anesthetic medications, but similarly failed to allege that any of the defendants manufactured the anesthetic medication used by the plaintiff or, even more specifically, failed to allege the name and the manufacturer of the product at issue. Finding that all claims against Abbott and AstraZeneca should be dismissed, U.S. District Court Judge James Selna held:

> Nowhere does the complaint even allege that any of the named medications produced by Abbott and AstraZeneca - ropivacaine, bupivacaine, lidocaine, and carbocaine - were administered to Sherman. Far from identifying the pain medication administered to Sherman, the complaint contains only generalized descriptions - "anesthetics," "anesthetic drugs," and "pain relief drugs." (*Id.* PP 1-6, 9, 11-13, 19-22, 24-28, 31, 34-35, 40-43, 45, 49-50, 52-56, 58-60, 65-68.)

---

[6] In fact, plaintiffs do not even allege which "local anesthetic product" each Defendant allegedly manufactures.

> Because neither Abbott nor AstraZeneca is alleged to have manufactured the medication at issue, and because that medication is not identified, the Court must dismiss the case as to both Abbott and AstraZeneca.
>
> To state a claim against Abbott and AstraZeneca, Sherman must allege, *inter alia,* causation - that Abbott and AstraZeneca are responsible for producing the pain medication that caused her injury. The complaint simply does not allege enough facts to meet this requirement and, therefore, fails to state a claim under *Twombly,* 550 U.S. at 570. Notably, there are not even enough facts for a reasonable inference of liability, since there is no allegation that Abbott and AstraZeneca produced the medication at issue. At most, the complaint alleges that they could have been one of many different types or brands of medications that might have been administered to Sherman. This is insufficient under *Twombly.*

*Id.* at *4-5.

Additionally, in *Dittman v. DJO, LLC*, 2009 WL 3246128, * 3 (D. Colo. October 5, 2009), the court similarly dismissed plaintiff's claims against Hospira, Abbott (collectively by the court, "Abbott"), and AstraZeneca. Judge Walker Miller held:

> I agree with Abbott and AstraZeneca that Plaintiff has not sufficiently alleged that any of their products were actually used in Plaintiff's pain pump and therefore could have caused his injury. This deficiency is fatal to the claim. Plaintiff has no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury. This mere possibility, *i.e.,* that the medicine used could have been made by these defendants, rather than by any number of other manufacturers of anesthesia drugs, is not adequate to state a claim under the prevailing standards as set forth by *Twombly* and *Iqbal.*

*Id.* at *3.

Where, as here, a plaintiff does not have sufficient information to allege the name or identity of a defendant, Arizona has provided a specific procedural mechanism to assist such plaintiffs, namely 16 A.R.S., Rules of Civil Procedure,

3437178v1(60637.13)                            - 9 -

Rule 10(f).[7]  *See Hartford Ins. Group v. Beck,* 12 Ariz. App. 532, 533 (1970) ("Under 16 A.R.S., Rules of Civil Procedure, Rule 10(f), it has long been proper to designate a defendant, whose actual name is unknown to plaintiff, by a 'John Doe' name."). In fact, plaintiffs have availed themselves of this statute's protection in suing "DOES 1-50," each of whom the Complaint alleges, "is responsible in some manner for the occurrences herein alleged, whether as a manufacturer of pain pumps or anesthetics, or in some other capacity, …." (Complaint, ¶ 23). The availability of this procedure eliminates any possible claim of unfairness from the requirement that a plaintiff wishing to sue a defendant for products liability must allege that the defendant's product was the cause of his or her injury.[8]

---

[7] 16 A.R.S., Rules of Civil Procedure, Rule 10(f) provides:
> When the name of the defendant is unknown to the plaintiff, the defendant may be designated in the pleadings or proceeding by any name. When his true name is discovered the pleading or proceeding may be amended accordingly.

Colo. R. Civ. Proc., Rule 10(a) provides similarly in pertinent part as follows:
> In the complaint initiating a lawsuit, the title of the action shall include the names of all the parties to the action. [] A party whose name is not known shall be designated by any name and the words "whose true name is unknown."

[8] To the extent plaintiff Frederick C. Peterson's claims fail as a matter of law, so too must his spouse's claims: those of Amelia Peterson. As a threshold matter, Amelia Peterson did not make any allegations that she used, purchased, or otherwise was exposed to any of the "Defendant Anesthetic Manufacturers[']" products. She, therefore, lacks standing to assert claims for negligence, strict products liability, and breach of warranty against these defendants. Further, if neither Abbott nor Hospira are liable to Fredrick C. Peterson for his alleged injuries, his spouse's loss of consortium claim (Fifth Cause of Action) against Abbott and Hospira fail as well. *See Barnes. v. Outlaw*, 192 Ariz. 283, 286 (1998) ("[B]ecause loss of consortium is a derivative claim [citation omitted], all elements of the underlying cause must be proven before the claim can exist.").

3437178v1(60637.13)    - 10 -

Accordingly, plaintiffs' claims are properly dismissed as they are precisely the type of "speculative" claims denounced under *Twombly*.

## IV. CONCLUSION

For the foregoing reasons, Abbott and Hospira respectfully request that their Motion to Dismiss plaintiffs' Complaint be granted.

RESPECTFULLY SUBMITTED this 16th day of February, 2010.

                                               JENNINGS, STROUSS & SALMON, P.L.C.

                                               By:     */s/ Michael J. O'Connor*
                                                     Michael J. O'Connor
                                                     201 East Washington Street – 11th Floor
                                                     Phoenix, AZ   85004-2385
                                                     Attorneys for Defendants Abbott Laboratories and Hospira, Inc.

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on February 16, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Lowell W. Finson – lowellf@phillipslaw.ws

Lori A. Zirkle – lori.zirkle@bowmanandbrooke.com

Carol M. Romano – cromano@rcdmlaw.com

Tophas Anderson, IV – tanderson@rcdmlaw.com

Paul E. Wojcicki – pwojcicki@smsm.com

James R. Broening – jrb@bowwlaw.com

Dawn L. Dauphine – ddauphine@omlaw.com

☐ I hereby certify that on         , I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

By      /s/ *K. C. Rusboldt*