UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| FREDERICK C. PETERSON, et. al. | ) ) | |
| Plaintiffs, | ) ) | 2:09-cv-02044 JWS |
| vs. | ) ) | ORDER AND OPINION |
| I-FLOW CORPORATION, et. al. | ) ) ) | [Re: Motion at Docket 88 ] |
| Defendants. | ) ) | |

## I.  MOTION PRESENTED

At docket 88, defendant I-Flow Corporation ("I-Flow") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the case for failure to state a claim. Plaintiffs Frederick C. Peterson ("Mr. Peterson"), Amelia Peterson ("Mrs. Peterson"), and Douglas F. Ricks ("Mr. Ricks") oppose the motion at docket 89.  I-Flow's reply is filed at docket 93.

## II.  BACKGROUND

This case arises out of alleged injuries suffered as a result of post-surgical pain treatment.  Mr. Peterson underwent arthroscopic surgery on both of his shoulders and Mr. Ricks had surgery on his right shoulder only.  After each surgery, Mr. Peterson and

Mr. Ricks were treated with a pain pump, manufactured by I-Flow, that continuously injected a local anesthetic into the repaired shoulder joint.  Both plaintiffs continued to experience pain and eventually developed Postarthroscopic Glenohumeral Chondrolysis ("PGC"), which describes the deterioration of certain cartilage in the shoulder joint.

Mr. Peterson and Mr. Ricks originally filed suit against eight pain pump manufacturers, four anesthetic manufacturers, and fifty Does, alleging negligence, strict products liability, breach of express warranty, breach of implied warranties, and violation of state consumer protection statutes.  Mrs. Peterson asserted a claim for loss of consortium.

On April 29, 2010, this court dismissed the claims against ten defendants, pursuant to those defendants' Rule 12(b)(6) motions.[1]  The basis for dismissal was plaintiffs' failure to conform to the federal pleading standard.  The court did, however, grant plaintiffs leave to amend their complaint.  On May 11, 2010, plaintiffs filed an amended complaint, which included only I-Flow and 50 Does as defendants.

I-Flow now moves pursuant to Rule 12(b)(6) to dismiss plaintiffs' amended complaint for failure to state a claim.  The crux of I-Flow's argument is that the amended complaint also fails to conform to the requisite pleading standard.

### III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a

---

[1]Doc. 83.

motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[2] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[3]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[4]  To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[5]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## IV.  DISCUSSION

In considering the several previous motions to dimiss, this court "agree[d] with the moving defendants that plaintiffs . . . failed to allege facts that [were] 'plausibly suggestive of a claim entitling [them] to relief.'"[7]  Although the court emphasized that plaintiffs' failure to isolate a particular manufacturer rendered the complaint impermissibly speculative, that was not the complaint's only flaw.  The court warned that "[e]*ven if plaintiffs were able to name the particular defendants who manufactured*

---

[2] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[3] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[4] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[5] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[6] *Id.*

[7] Doc. 83 (quoting *Moss v. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)).

*the pain pumps and anesthetic used in their treatment*, the remaining factual bases for their claims [were] similarly conclusory and vague."[8]

In their amended complaint, plaintiffs have substituted "I-Flow" for "Pain Pump Manufacturers" where necessary, omitted reference to all other defendants, and included the model of the particular pump used in each individual plaintiff's treatment.[9] Despite the court's warning, plaintiffs did not bolster the other factual content in their complaint.[10] However, plaintiffs' identification of a specific pain pump that was manufactured by the sole named defendant provides a significantly more robust context for plaintiffs' claims than the abstraction of plaintiffs' original complaint, which named more than a dozen potential defendants. Accordingly, the court will not summarily dismiss all claims in plaintiffs' amended complaint.

**A. Plaintiffs' Negligence and Strict Products Liability Claims Are Adequately Pled**

I-Flow argues that "[p]laintiffs' allegations that I-Flow should have known that its product was unsafe are vague and insufficient to satisfy the [federal] pleading requirements."[11] Plaintiffs' amended complaint references two published studies. Plaintiffs argue that these studies show that I-Flow should have known its pain pumps were dangerous. The first study merely identified PGC and nothing in the complaint

---

[8] Doc. 83 (emphasis added).

[9] *Compare, e.g.*, doc. 1 ¶ 32 *with* doc. 84 ¶ 15; doc. 84 ¶¶ 2, 3, 5.

[10] *Id.* at 7 (citing *Gilmore v. DJO, Inc.*, 663 F. Supp. 2d 856, 861 (D. Ariz. 2009)).

[11] Doc. 88 at 5.

suggests that it established a connection between pain pumps and PGC.[12]  Standing alone, that study could not have indicated to I-Flow that its pain pumps were dangerous.  The second study allegedly "established an epidemiological correlation between the use of pain pumps after arthroscopic surgery on the shoulder and glenohumeral chondrolysis."[13]  Taken as true, this fact would establish that I-Flow should have known of potential danger associated with its pain pump.  In other words, based on the study, I-Flow would have known that there was a *possibility* that its pain pump was dangerous.  Whether awareness of a possibility that a product is dangerous gives rise to a duty to warn is a difficult question, but unnecessary to examine here.  Plaintiffs further allege that I-Flow was "denied approval by the FDA for the use of pain pumps and local anesthetics after shoulder surgery."[14]  Taking this fact as true, and construing it in the light most favorable to plaintiffs, I-Flow would have been aware of a danger associated with its pain pumps and that awareness would have given rise to a duty to warn consumers.  Therefore, plaintiffs' claims based on such a duty–its negligence and strict liability claims–are adequately pled.

**B. Warranty Claims**

    **1. Plaintiffs' Implied Warranty Claim Merges With Their Strict Liability Claim**

---

[12]Doc. 84 ¶ 20 (citing DH Petty, *Glenohumeral Chondrolysis After Shoulder Arthroscopy: Case Reports and Review of the Literature*, 32 Am. J. Sports Med. 509 (2004)).

[13]*Id.* ¶ 21 (citing B. Hansen & C. Beck, *Postarthroscopic Glenohumeral Chondrolysis*, 35 Am. J. Sports Med. 1628 (2007)).

[14]Doc. 84 ¶ 26.

I-Flow argues that plaintiffs' "implied warranty claim merges with the strict products liability claim, and must be dismissed."[15]  Plaintiffs do not contest I-Flow's argument.  Under Arizona law, "when a complaint alleges product liability claims under theories of both breach of implied warranties and strict liability, those theories merge."[16]  Accordingly, plaintiffs may not assert an implied warranty claim separate from their strict liability claim.

**2. Plaintiffs' Express Warranty Claim is Insufficiently Pled**

I-Flow argues that plaintiffs' amended complaint insufficiently pleads an express warranty claim.  Plaintiffs counter that their allegations that I-Flow "expressly warranted that pain pumps were safe and well accepted by users" and that "Defendants expressly represented to Plaintiffs and/or Plaintiffs' physicians that the pain pumps . . . were safe and fit for use" satisfy the federal pleading standard.  Those statements, however, remain vague and conclusory–"for a complaint to survive a motion to dismiss, the *non-conclusory* 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[17]  Because conclusory statements provide the only support for plaintiffs' breach of express warranty claim, that claim is insufficiently pled.

**C. Plaintiffs' Consumer Fraud Claim Is Insufficiently Pled**

---

[15] Doc. 88 at 6.

[16] *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1103 (D. Ariz. 2003) (citing *Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct. App. 1977)).

[17] *Moss v. U.S. Secret Service,* 572 .3d 962, 969 (9th Cir. 2009) (emphasis added).

I-Flow argues that plaintiffs' consumer fraud claim has not been pled with the requisite particularity. The court agrees that plaintiffs' consumer fraud claim is premised on the same sort of conclusory allegations as their warranty claims. For instance, plaintiffs state that "Defendant I-Flow, by the actions described above, engaged in unfair, unconscionable, deceptive, fraudulent and misleading acts."[18] The only fact that might support this conclusion is itself conclusory–plaintiffs provide as factual background that, despite I-Flow's alleged knowledge of the dangers of its pain pumps, it "still promoted, sold, advertised, and marketed the use of pain pumps . . . after shoulder surgery."[19] Plaintiffs have not alleged "a false promise or misrepresentation made in connection with the sale or advertisement of the merchandise."[20] Plaintiffs' have not alleged *any* specific sales, advertisement or marketing efforts or *any* particularized promise or misrepresentation accompanying them. Because plaintiffs' consumer fraud claim rests on generalized, conclusory allegations, it is insufficiently pled.

### D.  Joinder of Mr. Ricks Is Proper

I-Flow argues that the claims of Mr. Ricks should be severed and transferred to the District of Colorado. Under Rule 20, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences;

---

[18] Doc. 84 ¶ 90.

[19] Doc. 84 ¶ 25.

[20] *Dunlap v. Jimm GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. 1983).

and (B) any question of law or fact common to all plaintiffs will arise in the action."[21] Here, Mr. Peterson and Mr. Ricks are asserting claims that arise out of I-Flow's distribution of an allegedly dangerous pain pump–the relevant occurrence for purposes of Rule 20. While their respective injuries were the product of individualized surgeries, their claims arise out of I-Flow's actions prior to those surgeries. Common questions of law and fact are assured and joinder is proper.

**E. Leave to Amend**

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"[22] "When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic."[23] The court may also consider whether an amendment would be futile, and "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend."[24] Having already given plaintiffs fair warning of the factual deficiencies in their complaint, and an opportunity to remedy those deficiencies, the court finds that further leave to amend would be futile.

## V.  CONCLUSION

---

[21] Fed. R. Civ. P. 20(a)(1).

[22] *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

[23] *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

[24] *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

For the foregoing reasons, I-Flow's motion at docket 88 is **GRANTED** in part and **DENIED** in part. It is **GRANTED** to the extent it seeks to dismiss plaintiffs' breach of implied warranty, breach of express warranty, and consumer fraud claims, and those claims are **DISMISSED**. The motion is **DENIED** to the extent it seeks to dismiss plaintiffs' negligence and strict liability claims.

DATED this 7th day of October 2010.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE